UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

     v.                                  5:08-CR-408 (DNH)

SEBASTIEN FREDETTE and MATHIEU
LANGLOIS,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

HON. ANDREW T. BAXTER                       STEPHEN C. GREEN, ESQ.
Office of the United States Attorney        Assistant United States Attorney
Attorneys for the United States of America
100 South Clinton Street
Syracuse, New York 13261-7198

MARK A. KAPLAN, ESQ.
Attorney for Defendant Fredette
Jarvis, Kaplan Law Firm
P.O. Box 902
Burlington, Vermont 05402

JOHN T. PEPPER, JR, ESQ.
Attorney for Defendant Langlois
Pepper & Associates
30 Berlioz
Suite PH 2.0
Montreal, Quebec, Canada


DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

Defendants Sebastien Fredette ("Fredette") and Mathieu Langlois ("Langlois") are charged with one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841.

Fredette moves to suppress evidence obtained from the search of defendants' vehicle on grounds that the arresting police officer unlawfully stopped the vehicle in violation of the Fourth Amendment to the United States Constitution. He also contends that, if the initial stop is determined to be lawful, the seized evidence should nonetheless be suppressed because the police failed to use the least intrusive means available to confirm their suspicions and detained him longer than necessary. The United States of America (the "Government") opposes. The motion was taken on submit without oral argument.

**II. FACTUAL BACKGROUND**[1]

At approximately 8:00 a.m. on May 28, 2008, Deputy Shane L. Morrill ("Deputy Morrill") of the St. Lawrence County Sheriff's Office began following defendants' vehicle in his marked police car southbound on State Route 11 in Canton, New York. Deputy Morrill was traveling behind defendants' vehicle when they approached a traffic signal at the intersection of State Route 11 and State Route 310. The traffic signal was red when he and the defendants were approaching the intersection in their vehicles. There was one other vehicle

---

[1] These facts are based on the fourteen paragraph affidavit of Deputy Morrill with five photographs attached and the eight paragraph affidavit of Deputy Sheriff Sean P. O'Brien. Fredette submitted a six paragraph affidavit in which he did not deny any material facts.

already stopped at the traffic signal ahead of defendants' vehicle.  The traffic signal turned green and the vehicle ahead of defendants' vehicle then proceeded through the intersection.  However, defendants' vehicle continued to decelerate and soon came to a complete stop at the intersection despite the fact that the traffic signal had already turned green.  Deputy Morrill then made "two taps" on his police car's horn after waiting "several seconds" for defendants' vehicle to proceed through the intersection.  In apparent response, defendants' vehicle then proceeded forward through the intersection.

Defendants' vehicle traveled approximately 100 yards further southbound on State Route 11 at well under the posted speed limit of 40 miles per hour before abruptly turning right into a large grocery store parking lot. The right turn signal was engaged "just before" defendants' vehicle reached the entrance to the parking lot.

Deputy Morrill followed defendants' vehicle into the parking lot and observed it come to a stop in a marked parking space.  He pulled into an adjacent parking space immediately behind defendants' vehicle.  He next observed Langlois exit the front passenger door of defendants' vehicle and walk towards the grocery store with a bottled drink in his hand.  At that point, Deputy Morrill activated his emergency lights and stood up from his seat with one foot out of his police vehicle before requesting Langlois return to his vehicle.  Langlois did not respond to the first request but complied after Deputy Morrill made a second request.

Upon approaching the driver's side window to defendants' vehicle, Deputy Morrill observed a large bag in the back seat of the vehicle.  He also observed an air freshener device hanging from the rear driver's side window above the large bag.  He asked the driver of defendants' vehicle, Fredette, to produce his driver's license and registration.  Fredette

handed Deputy Morrill his Quebec driver's license and rental company papers from a car rental company in Plattsburgh, New York.  Both defendants then indicated that they were driving towards Buffalo, New York to "just visit," but neither defendant identified where or with whom in the City of Buffalo they would be staying.  Fredette's hand was trembling while holding a lit cigarette during their conversation.

Deputy Sheriff Sean P. O'Brien arrived on the scene and interviewed Langlois.  He also stated they were going to Buffalo to "just visit", to no one in particular.  Deputy Morrill smelled the odor of marijuana from inside defendants' vehicle after the smoke from Fredette's cigarette evanesced.  Deputy Morrill next asked the defendants why they had pulled into the parking lot.  Defendants explained they wanted to get something to drink. After Deputy Morrill pointed out that both defendants already had drinks, defendants explained they also wanted to get food.  Deputy Morrill then observed a plastic bag which he believed to contain food lying on the floor of the vehicle's back seat.  Following this observation, Deputy Morrill returned to his police vehicle where he checked the documentation provided by Fredette and called for a drug dog to arrive.

Upon returning to defendants' vehicle, Deputy Morrill asked Fredette if he would consent to a search of the vehicle.  Fredette refused to consent to a search and was nervous and visibly shaking while talking.  Shortly thereafter, a U.S. Border Patrol agent with a K-9 drug dog arrived and positively alerted to the presence of illegal drugs inside defendants' vehicle.  The agent handling the K-9 drug dog asked Fredette what was inside the large bag visible on the back seat of the vehicle and informed Fredette that the drug dog would examine the inside of the vehicle.  Fredette declined to respond until the drug dog was brought over to defendants' vehicle for a second drug sniff.  At that point, Fredette indicated

he was aware the bag contained drugs but did not know its specific contents. The drug dog positively indicated the presence of drugs inside the bag and two additional bags found in the trunk of defendants' vehicle. A search of the three bags revealed that all bags were almost filled to capacity with large quantities of marijuana. The defendants' vehicle and its contents were then turned over to agents from United States Immigration and Customs Enforcement.

## III. DISCUSSION

### A. MOTION TO SUPPRESS

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" by the Government, including stops of vehicles before an arrest is made. United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002). A stop does not violate the Fourth Amendment, however, so long as a law enforcement officer has reasonable suspicion to believe the driver has committed or is about to commit a crime. See Terry v. Ohio, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968). This legal standard is notably lesser than what is required to show probable cause. See Arvizu, 534 U.S. at 273, 122 S. Ct. at 750; United States v. Sokolow, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585 (1989). Courts must look to the totality of the circumstances when determining whether an officer has a sufficient basis for reasonable suspicion of criminal activity, including officers' factual inferences based upon their own experience and training "that might well elude an untrained person." Arvizu, 534 U.S. at 273, 122 U.S. at 750 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981)).

The first issue raised by Fredette is whether Deputy Morrill had sufficient grounds for stopping defendants' vehicle. The Government contends Deputy Morrill had a reasonable suspicion defendants had committed a traffic violation when he failed to proceed through the

green traffic signal and then drove well below the posted speed limit for State Route 11.[2] Alternatively, the Government explains that Deputy Morrill's observations also gave rise to his legitimate concern that Fredette was drowsy, ill, intoxicated, or otherwise impaired and thus posed a threat to himself and other motorists.

There is some question as to whether Deputy Morrill even stopped defendants' vehicle within the context of the search and seizure doctrine.  In any event, however, Fredette fails to deny any of the factual observations stated in Deputy Morrill's affidavit.  In his brief affidavit, Fredette merely states that he "appropriately proceeded through the light" after the traffic signal turned green. Def's. Aff. ¶ 4.  He makes no statement contradicting any of Deputy Morrill's observations.  His statement that he "appropriately" operated his vehicle through the intersection is nothing more than a conclusion.  He offers no description of how long he was at the intersection, the color of the traffic signal as he approached the intersection, his method of making a right turn, or any other specific allegation that, if accepted as true, would call into question Deputy Morrill's account of the events leading up to the defendants' arrests.[3]  Further, Fredette was permitted to submit his affidavit *after* Deputy Morrill's affidavit was filed, thereby providing him with an express opportunity to examine Deputy Morrill's and Deputy O'Brien's affidavits and specifically refute these statements.  He has declined to do so.

---

[2] The Government cites to New York Vehicle and Traffic Law § 1110 ("Every person shall obey the instructions of any official traffic-control device applicable to him.") and § 1181 ("No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with the law.").

[3] Therefore, an evidentiary hearing is not required.

Even if defendants had not violated any section of the New York Vehicle and Traffic Law, Deputy Morrill had grounds to reasonably suspect Fredette was ill, drowsy, or possibly impaired so as to pose a threat to himself or other motorists.  The delay at the traffic signal, the subsequent operation of defendants' vehicle traveling well below the posted speed limit, and the erratic, sudden turn into a parking lot would allow a police officer of Deputy Morrill's experience and training to reasonably suspect Fredette had either committed a violation or stood as a risk on the roadways.  Therefore, defendants' Fourth Amendment rights were not violated when Deputy Morrill stopped their vehicle.

Although Fredette raises a second issue as to whether the police used the least intrusive means available to confirm their suspicions and detained defendants longer than necessary, he offers no case law in support of his argument and fails to allege any facts contradicting any of the officers' statements as to what occurred during the questioning of defendants.  Notwithstanding the defects of defendant's motion papers and his affidavit, the use of a K-9 drug dog during the lawful stop of defendants' vehicle does not violate the Fourth Amendment. Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S. Ct. 834, 838 (2005). Additionally, Deputy Morrill had ample grounds to believe defendants' vehicle contained illegal drugs after seeing an air freshener hanging over a large bag, observing Fredette's visible nervousness, hearing defendants' shaky explanation for where they were headed and why they had pulled into the grocery store, and most importantly, smelling marijuana emanating from inside defendants' vehicle.  No consideration of whether the detention was too long is warranted in light of the grounds for believing defendants had committed a crime as well as Fredette's utter failure to state how long he was detained.  Accordingly, the search

of defendants' vehicle did not violate defendants' Fourth Amendment rights and the motion to suppress the seized evidence will be denied.

## IV. <u>CONCLUSION</u>

Fredette fails to allege facts in opposition to Deputy Morrill's account of how he was driving defendants' vehicle.  His statement that he was driving "appropriately" is insufficient as it amounts to only a conclusion that he did not violate the law or drive in an erratic manner.  Additionally, once lawfully stopped, the use of a K-9 drug dog did not violate defendants' Fourth Amendment rights.  The fact that the K-9 drug dog positively alerted to the presence of drugs inside defendants' vehicle rendered the subsequent searches proper.

Therefore, it is

ORDERED that

Defendant Fredette's motion is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 3, 2008
       Utica, New York.